THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| The UNITED STATES OF AMERICA for the use and benefit of AIR-O-FASTENERS, INC., a Utah Corporation, <br><br> Plaintiffs, <br> vs. <br><br> MIKE BARNETT CONSTRUCTION, INC., a Utah Corporation, FIDELITY AND DEPOSIT OF MARYLAND, a Maryland Corporation; DOES 1-10, <br><br> Defendants. | Case No. 1:13CV050 |

## I. SUMMARY

This case is before the Court on Plaintiff Air-O-Fasteners, Inc., Motion for Joinder, Motion to Enforce, and Motion for Entry of Judgment (Docket #14).[1] Air-O-Fasteners seeks enforcement of an alleged settlement with Creative Times Day School, Inc. ("CTI") and Defendant Fidelity and Deposit Company of Maryland ("Fidelity") concerning payment in consideration for supplies provided to CTI's construction site and guaranteed under bond by Fidelity. Both CTI and Fidelity dispute that a valid and enforceable settlement agreement exists.

## II. BACKGROUND

In conjunction with their Job Corps Dormitories Construction Site in Syracuse, Utah, CTI sub-contracted Defendant Mike Barnett Construction, Inc. ("MBC") for primary building, who in

---

[1] Also before he Court is Air-O-Fasteners' Motion to Strike (Docket #31), rendered moot by today's decision. While the motion has merit, the Court is capable of ignoring and discretely disregarding parol evidence and conclusory or speculative statements of belief, while still giving appropriate weight to admissible portions of the affidavits.

1

turn contracted Air-O-Fasteners to provide supplies. Pursuant to federal law, CTI engaged Fidelity to bond and guarantee the project. 40 U.S.C. 3131(b). When Air-O-Fasteners remained unpaid, they filed suit against MBC for breach of contract, and against Fidelity for payment under their bond. The parties allegedly reached a settlement joining CTI as party defendant, and in which both Fidelity and CTI assumed joint and several liability for the outstanding payments. CTI and Fidelity were to pay Air-O-Fasteners a total amount of $46,311.08 through twelve monthly installments of $500 (totaling $6,000) and a $40,311.08 balloon payment in the thirteenth month to cover the remaining principal ($46,311.08 - $6,000 = $40,311.08). If the terms were satisfied, Air-O-Fasteners agreed to waive any claim to interest, attorney's fees, and costs. However, should CTI and Fidelity default on their payment, Air-O-Fasteners could enter a joint stipulated judgment for the principle amount, interest, attorneys' fees, and costs.

On July 30, 2013 Air-O-Fasteners provided the initial settlement outline, highlighting the primary conditions required to resolve the dispute. On August, 6, 2013 CTI and Fidelity expressly accepted the proposed terms, indicating that the agreement and a joint stipulated judgment should be prepared for signing. Counsel for Air-O-Fasteners drafted the documents, clarifying that CTI would be responsible for payment but that Fidelity would remain jointly and severally liable in the event of default. The documents were delivered to counsel for CTI and Fidelity on August 13, 2013, who then responded through a paralegal on September 23, 2013 by sending a second draft with minor alterations and confirmation that "if the redline changes are implemented, [CTI and Fidelity] will sign." These redline changes included CTI's consent to be joined as a party defendant to the litigation, and further stipulated a liquidated damage amount in the event of default—the principle, prejudgment interest as of August 15, 2013, attorney fees, and costs would total $56,913.49. The draft retained provision for additional post-judgment

interest, attorney fees, and costs subsequently incurred and accrued. Air-O-Fastener's accepted the changes, updated all corresponding documents accordingly, and returned them to CTI and Fidelity for signature on September 25, 2013. That same day CTI commenced performance and made the first monthly payment as stipulated by the agreement. When Air-O-Fasteners inquired about the documents on October 9, 2013, counsel for CTI and Fidelity replied via e-mail: "I have the documents signed and will forward them to you."

Air-O-Fasteners is seeking enforcement of the settlement agreement. CTI and Fidelity now assert that the documents were never signed, that the parties never reached a meeting of the minds sufficient to constitute a binding agreement, and that their counsel lacked authority to enter a settlement agreement on their behalf.

## III.  DISCUSSION

### A.  *Existence of a Valid Contract*

Air-O-Fasteners entered into a valid settlement with CTI and Fidelity, and is entitled to enforcement of that agreement according to its terms. "Settlement agreements are favored by law…and are governed by the rules applied to general contract actions." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995) (citations omitted). Basic principles of contract law require a meeting of the minds as to the integral terms of an agreement. *Nielsen v. Gold's Gym*, 2003 UT 37, 78 P.3d 600, 602 (citations omitted). This is essential to the formation of a contract—an agreement cannot be enforced if its terms are indefinite. *Id.*; *see also Terry v. Bacon*, 2011 UT App 432 ¶ 21, 269 P.3d 188, 195 ("Where there is a meeting of the minds as to the essential portions of the agreement and the terms are sufficiently definite as to be capable of being

enforced, a binding contract exists.") (internal quotations omitted). Whether the parties had a meeting of the minds is generally an issue of fact, *O'Hara v. Hall,* 628 P.2d 1289, 1291 (Utah 1981), though settlements may be summarily enforced if there is a binding agreement and the excuse for nonperformance is comparatively insubstantial, *Sackler,* 897 P.2d at 1220; *see also Tracy-Collins Bank & Trust Co. v. Travelstead*, 592 P.2d 605, 607 (Utah 1979) ( "It is quite well established that a settlement agreement may be summarily enforced by motion in the court of the original action.").

On July 30, 2013 Air-O-Fasteners' sent a bona fide offer with the integral terms required to settle the dispute. Taylor Aff. Ex. A; *see also DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 12, 34 P.3d 785, 788–89 ("A bona fide offer is one made in good faith which, on acceptance, would be a valid and binding contract."). The offer stipulated CTI to judgment in favor of Air-O-Fasteners for the principle amount of the outstanding obligation of $46,311.08, set forth the method of payment, and agreed to waive any claim to interest, attorney's fees, and costs upon successful compliance. It specified that failure to fulfill these obligations would result in the entire judgment being executed against both CTI and Fidelity, including interest, attorney's fees, and costs. The terms were explicit, and on August, 6, 2013 CTI and Fidelity accepted the proposed settlement outline via e-mail and indicated that the agreement should be prepared for signing. Taylor Aff. Ex. B.

Counsel for Air-O-Fasteners prepared the documents and delivered them to counsel for CTI and Fidelity on August 13, 2013, who then responded through a paralegal on September 23, 2013 by sending a second draft with minor alterations in the language and confirmation that "if the redline changes are implemented, [CTI and Fidelity] will sign." Taylor Aff. Ex. E; F. Air-O-Fasteners accepted the changes, updated the documents, and returned them to CTI and Fidelity

4

for signature on September 25, 2013. Taylor Aff. Ex. G; H. Throughout this process the terms did not vary in a material manner from the original agreement. In any event, they were clear enough that CTI commenced performance and made the first payment under the agreement that same day. When Air-O-Fasteners later inquired about the documents on October 9, 2013, counsel for CTI and Fidelity replied: "I have the documents signed and will forward them to you." Taylor Aff. Ex. I.

CTI and Fidelity now claim that the documents were never signed and that a meeting of the minds sufficient to form a valid settlement agreement never occurred, despite their partial performance and counsel's assurance that the signed documents were in his possession. Equitable principles of estoppel preclude these arguments. Furthermore, the integral terms of the agreement were established as far back as the July 30 and August 6 correspondence. These were not preliminary negotiations. Subsequent alterations were minor and were agreed upon by both parties. It is of no legal consequence that the parties now claim to have not signed the settlement agreement. *Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987). It is a "basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds." *Id*. *See also Sackler*, 897 P.2d at 1221 (quoting Restatement (Second) of Contracts § 27 (1981)) ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof."); *Lawrence,* 642 P.2d at 384 ("If a written agreement is intended to memorialize an oral contract, a subsequent failure to execute the written document does not nullify the oral contract."); *Goodmansen v. Liberty Vending Systems, Inc.*, 866 P.2d 581, 585 (Utah Ct. App. 1993) ("Parties have no right to welch on a settlement

deal during the sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation.").

CTI and Fidelity further claim that their counsel did not have the authority to enter an agreement on their behalf, though they failed to communicate this limitation to Air-O-Fasteners. However, principals are bound by the acts of their agents when acting within the apparent scope of their authority. *Forsyth v. Pendleton*, 617 P.2d 358, 360 (Utah 1980). Neither the agent nor principal can later deny such authority against innocent third parties who have acted in reliance. *Id.* Throughout the entire settlement process, CTI and Fidelity held their counsel out as their representative, cloaked in authority to act on their behalf. Whatever limitation there may have been, it was not communicated to Air-O-Fasteners and cannot now be asserted to nullify a prior agreement. *See id.*

CTI and Fidelity finally claim that any acceptance of the settlement agreement was conditioned on their receipt of corresponding payments from MBC, who has since stopped making such payments and threatened bankruptcy. While the issue may have been raised with Air-O-Fasteners, there is no indication that such condition was ever included in the settlement. The meeting of the minds and mutual assent of the parties which constitute the contract "must be gathered from the language employed by them." *Allen v. Bissinger & Co.*, 62 Utah 226, 219 P. 539, 541 (1923) (quoting 13 C. J. 265). Having reached an agreement and produced documentation:

> The rule is well settled that, where the parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, be conclusively presumed that the writing contained the whole of the agreement between the parties, that it is a complete memorial of such agreement, and that parol evidence of contemporaneous conversations, representations, or statements

6

> will not be received for the purpose of varying or adding to the terms of the written document.

*Rainford v. Rytting*, 22 Utah 2d 252, 255, 451 P.2d 769, 770–71 (1969) (citations omitted). The settlement agreement further contains an integration clause, presenting it as a complete representation of all terms material to the agreement. Failure to include conditions concerning MBC in the settlement prevent CTI and Fidelity from now raising this claim after both entering the agreement and commencing performance.

Having established the existence of a valid settlement agreement, Air-O-Fasteners is entitled to summary enforcement. *Tracy-Collins Bank & Trust Co.*, 592 P.2d at 607.

### B. *Joinder of CTI as Party Defendant*

CTI agreed and consented to be joined in this action as per the terms of the settlement. Federal Rules of Civil Procedure 20(a)(2) states that "Persons…may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Moreover, "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The parties agreed to hold both Fidelity and CTI jointly and severally responsible for the installment and final payments due to Air-O-Fasteners. CTI and Fidelity explicitly did not object to joinder.

### C. *Failure to Comply with the Timeline of the Court*

Air-O-Fasteners has entered an additional notice of opposition to any further enlargement of time for CTI and Fidelity. While consideration of this notice becomes largely superfluous if

judgment is entered, the events to which it responds are worthy of mention. CTI and Fidelity have four times missed their deadline to file a responsive pleading, three in conjunction with the Motion to Enforce the settlement, and again in conjunction with Air-O-Fasteners Motion to Strike. In general, parties must reply according to the timeline set by the court or applicable procedural rule. If a party wishes to extend the time to respond, "the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, *before* the original time or its extension expires." Fed. R. Civ. Pro. 6(b)(1)(A) (emphasis added). If the original deadline has passed, the court may extend "if the party failed to act for excusable neglect". Fed. R. Civ. Pro. 6(b)(1)(B). The moving party cannot simply characterize its inattention as excusable but, instead, must demonstrate "both . . . good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290 (10th Cir. 1974). "Excusable neglect" under Rule 6(b) requires an elevated showing by the moving party: "[S]imple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required." *Putnam v. Morris*, 833 F.2d 903, 905, (10th Cir. 1987) (emphasis in original) (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir.1985)). CTI and Fidelity's claim that "the Motion was on hold while settlement discussions were conducted," does not excuse failure to file for an extension within the specified period. Ex Parte Motion for Enlargement of Time, at ¶1 (Apr. 2, 2014). Nor does it explain the lack of communication between the parties since the February 21, 2014 settlement offer and Air-O-Fasteners' March 6,

2014 counter-offer. Whatever justification may exist, it is insufficient to excuse such excessive non-compliance.

## IV.  CONCLUSION

Correspondence and partial performance between Air-O-Fasteners, CTI and Fidelity demonstrate that the material terms of their settlement agreement were adequately conveyed and agreed upon as to constitute a meeting of the minds, even without a signed document. Equitable principles of estoppel—particularly in conjunction with partial performance and representation by counsel for CTI and Fidelity that the documents were signed—support this conclusion. CTI and Fidelity unreservedly held their counsel out as agent in the settlement process and cannot now claim a limitation on this power against third parties. According to the terms of the settlement agreement, CTI has consented to be joined as party defendant and judgment is entered in favor of Air-O-Fasteners in the amount of $56, 913.49, plus post-judgment interest, attorney's fees, and costs reasonably incurred and accrued to enforce the agreement.

IT IS SO ORDERED.

DATED this 12th day of June, 2014.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT