THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| The UNITED STATES OF AMERICA for the use and benefit of AIR-O-FASTENERS, INC., a Utah Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MIKE BARNETT CONSTRUCTION, INC., a Utah Corporation, FIDELITY AND DEPOSIT OF MARYLAND, a Maryland Corporation; DOES 1-10,<br><br>Defendants. | Case No. 1:13-CV-00050-DS<br><br>MEMORANDUM DECISION |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**I. SUMMARY**

This case is before the Court on Plaintiff Air-O-Fasteners, Inc.'s Motion to Set Aside Judgment (ECF No. 52). Air-O-Fasteners seeks to set aside the Satisfaction of Judgment signed by Walter T. Merrill on January 23, 2015, and filed with the Court on June 4, 2015 (ECF No. 49), alleging that the Satisfaction of Judgment was mistakenly signed. Creative Times Day School, Inc. ("CTI") and Fidelity & Deposit Company of Maryland ("F&D") oppose the Motion to Set Aside Judgment and argue that it would be unduly prejudicial to set aside the Satisfaction of Judgment.

**II. BACKGROUND**

Plaintiff Air-O-Fasteners made a bond claim against Fidelity & Deposit Company of Maryland ("F&D"), which triggered the indemnification provision of a bond agreement between Creative Times Day School, Inc. ("CTI") and F&D requiring CTI "to indemnify and defend

1

F&D in the event of a bond claim." Mr. Reeve was retained to represent CTI and had minimal contact with F&D.

On June 12th, 2014, this Court ordered the Defendants pay $56,913.49 in damages to Plaintiff, plus post-judgment interest, attorney's fees, and reasonable enforcement costs. *See* docket. Additionally, on October 20th, 2014, this Court granted the Plaintiff's Motion for Attorney's Fees and awarded Plaintiff $24,927.78. *See* docket. These two awards totaled in excess of $81,841.27.

During earlier stages of the dispute, Plaintiff Air-O-Fasteners, Inc. had retained attorney Craig Taylor for representation. After the Court issued the June 12th and October 20th judgments in Plaintiff's favor, Plaintiff Air-O-Fasteners retained attorney Graeme Abraham to collect the judgment amounts from Defendants.

On January 14, 2015, Mr. Abraham "sent a letter to F&D indicating that he ha[d] been retained to collect a judgment in the amount of $57,197.17." Pl.'s Mot. at 2. (F&D was not Mr. Reeve's client, and this did not represent the full amount awarded by both orders. As correctly noted in Defendants' response brief, "[w]hy Mr. Abraham did not communicate the full payoff to F&D or make reference to some additional amount that was owed is not understood." Defs.' Mot. in Opp'n at 3.) This letter was passed to CTI on or about January 19, 2015, and Mr. Reeve was notified of the letter "two or three days after it was delivered to CTI." CTI, after consulting with Mr. Reeve, prepared to pay the requested $57,197.17 in spite of standing Court orders to pay $81,841.27 plus post-judgment interest and other fees.

On or about January 22, 2015 (apparently after CTI had prepared the check in the amount of $57,197.17), Mr. Abraham sent a second payoff quote for $82,832.39 to Mr. Reeve. Defs.' Mot. in Opp'n at 3.

2

Apparently "confused as to why this second number was so much higher than the quote provided by Air-O-Fasteners to F&D", Defs.' Mot. in Opp'n Ex. A at 2, CTI (after consulting with Mr. Reeve) decided to pay the lower $57,197.17 amount, "assum[ing] that Air-O-Fasteners was willing to accept the lesser of the two amounts if payment was made by January 23, 2015… [and i]f the amount was wrong, . . . the check would be rejected". Defs.' Mot. in Opp'n Ex. A at 2. Sometime between January 22 and 23, Mr. Reeve unsuccessfully attempted to contact Mr. Abraham, who was out of the office, to resolve the confusion.

Mr. Reeve sent the check for $57,197.17 to Mr. Abraham's office via a courier service. Defs.' Mot. in Opp'n Ex. D at 2. Although Mr. Reeve's paralegal's affidavit states that "[t]he courier was not given any instructions, nor any authorization from me as to what to tell Mr. Abraham or anyone at his office", *id.*, the courier service form that the paralegal filled out and used to request the courier's services clearly states in both the "Description of Delivery" and "Special Instructions" field that the courier was to "pick up check & papers… & deliver to Merrill Law Office. Pick up Satisfaction of Judgment from Merrill & return to Van Cott [with] Tuesday's regular courier run." *Id.* at 4.

Mr. Abraham was out of the office, so Mr. Merrill (relying on the courier's representations that a settlement had been reached, Merrill Decl. at ¶¶ 5–10) mistakenly accepted the $57,197.17 check and signed the Satisfaction of Judgment on January 23, 2015, the same day the check was delivered. Merrill Decl. at ¶¶ 5–10. The paralegal's instructions directed that the courier "return [the Satisfaction of Judgment] to Van Cott [with] Tuesday's regular courier run", Defs.' Mot. in Opp'n Ex. D at 4, so Mr. Reeve apparently did not receive the Satisfaction of Judgment until on or about the following Tuesday, January 27, 2015.

Meanwhile, before the Satisfaction of Judgment was received by Mr. Reeve on January 27, 2015, Mr. Abraham returned to the office on January 23, 2015, after the check had been accepted, and discovered the mistake. Mr. Abraham contacted Mr. Reeve on January 23, 2015 at 4:10 p.m. to clarify that the full judgment had not been satisfied. Pl.'s Mot. Ex. E. Mr. Reeve responded that he would "discuss this surprising development with [his] client", Pl.'s Mot. at 5, but then "assumed that the matter had been resolved" when the January 23, 2015 Satisfaction was delivered to Mr. Reeve's offices on January 27. Defs.' Mot. in Opp'n at 5–6. Mr. Abraham has since attempted to collect the remainder of the judgment, but Defendants have refused to provide any further payoff monies. Defs.' Mot. in Opp'n at 6; Al Syme Aff. at ¶ 17; Reeve Aff. at ¶ 23; Les Syme Aff. at ¶ 17.

## III.  DISCUSSION

### A.   Fed. R. Civ. P. 60(b)(1)

Under Fed. R. Civ. P. 60(b)(1), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect". Plaintiff moves to set aside the Satisfaction of Judgment, claiming that for Mr. Merrill to accept the $57,197.17 check and sign the Satisfaction of Judgment was mistake or excusable neglect on the Plaintiff's behalf. Plaintiff argues that justice requires the Satisfaction of Judgment be set aside so that Plaintiff may collect the full amount of the Court-ordered awards, more than $82,832.39 in total.

Defendants do not contest that a mistake was made, and do not contend that they have satisfied the $82,832.39-plus judgment in full. Defendants contend that, because of Mr.

Abraham's "blatant lack of diligence," what happened was not "excusable neglect" and therefore the Plaintiff should not be granted relief by having the Satisfaction set aside under Fed. R. Civ. P. 60(b)(1).

Mr. Abraham's handling of the collection was confusing at best, and unethical at worst.[1] However, the Plaintiff moves to be granted relief under Rule 60(b)(1) not to ameliorate one of Mr. Abraham's mistakes, but to remedy Mr. Merrill's mistake in accepting the check and signing the Satisfaction of Judgment.

Mr. Merrill's mistake represents the critical moment at which error directly caused the situation before the Court today. Mr. Merrill was not an attorney for the Plaintiff's case, and had no idea of the progress of the settlement or collection. Decl. of Walter T. Merrill at ¶ 2. He relied on the courier's representations that "a settlement had [already] been reached" in the amount of $57,197.17, and in reliance thereon he accepted the check and signed the Satisfaction of Judgment. *Id.* at ¶ 5–8. Mr. Merrill believed he was merely accepting payment on behalf of Mr. Abraham for an already-settled matter; Mr. Merrill did not believe he was agreeing to a settlement not yet approved by Mr. Abraham—and indeed, Mr. Merrill had no authority to come to such a settlement on behalf of Air-O-Fasteners, whom he did not represent. *Id.* at ¶ 9.

The 10th Circuit has held that Fed. R. Civ. P. 60(b)(1) "provides for the reconsideration of judgments… where… an attorney in the litigation has acted without authority for a party".

---

[1] The Utah Bar Association Code of Professional Conduct prohibits communicating with a person or organization that the attorney "knows to be represented by another lawyer in the matter" about the subject of the representation. Rule 4.2(a). Plaintiff's prior counsel admits doing exactly that—in the January 23, 2014 email from Mr. Abraham to Mr. Reeve, Mr. Abraham states: "Our office received a check from your office in the amount of $57,197.17. That amount was cited in a letter I wrote to Fidelity & Deposit regarding one of the judgments (pursuant to the order enforcing the settlement agreement)." Pl.'s Reply Ex. A.

Plaintiff has also not resolved the question of why Mr. Abraham sent an obviously incomplete payoff request to Defendant in the first place. However, in considering a motion to set aside the Satisfaction of Judgment under Rule 60(b), the trial court must "resolv[e] all doubts in favor of the party seeking relief." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1445 (10th Cir. 1983), quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).

*Cashner v. Freedom Stores*, 98 F.3d 572, 576 (10th Cir. 1996), *citing* 7 Moore, *Federal Practice* P 60.22[2], 60-175-179. Not only did Mr. Merrill act without authority, he was not even "in the litigation" in any sense until he mistakenly accepted the courier's delivery.  Rule 60(b)(1) allows the Court to excuse Plaintiff from the effects of a settlement reached through the mistake of an attorney who was never the Plaintiff's legal representative. *See Surety Ins. Co. v. Williams*, 729 F.2d 581, 582–583 (8th Cir. 1984) ("Although an attorney is presumed to possess authority to act on behalf of the client, 'a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry."), *citing Bradford Exchange v. Trein's Exchange,* 600 F.2d 99, 102 (7th Cir. 1979) (per curiam); *see also Harris v. Ark. State Highway & Transp. Dep't*, 437 F.3d 749, 750–751 (8th Cir. 2006) ("Once it is shown . . . that an attorney has entered into an agreement to settle a case, the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given. This is a heavy burden."), *citing Greater Kansas City Laborers Pension Fund v. Paramount Indus. Inc.*, 829 F.2d 644, 646 (8th Cir. 1987) (citations omitted). Mr. Merrill's affirmation that he had no authority to enter into a settlement on Air-O-Fastener's behalf, *see* Merrill Decl. at ¶ 9, as well as the fact that Mr. Abraham immediately moved to correct the mistake once he became aware of it, *see* Pl.'s Mot. Ex. E, together satisfy this "heavy burden". *Harris*, 437 F.3d at 751.

    Mr. Merrill's negligence in accepting the check and signing the Satisfaction of Judgment was based on reasonable reliance upon the courier's representations that a settlement had already been reached.[2] Defendants claim that they gave the courier no instructions as to what to tell Mr. Abraham upon delivering the check, *see* Reeve Aff. at ¶ 11; Irvin Aff. at ¶ 7, but do not present

---

[2] The courier's representations apparently included producing the January 14 letter citing the $57,197.17 amount. Even if the January 14 letter constituted a valid offer to settle for $57,197.17, Mr. Abraham had already revoked any such offer in his January 22 email to Mr. Reeve. Pl.'s Reply at 5.

any evidence to disprove Plaintiff's allegations that the courier did, in fact, make such representations.

For Mr. Merrill, not an attorney in this litigation, to rely on the Defendants' representative's statements in good faith is "excusable neglect" under Rule 60(b)(1). The 10th Circuit Court has said:

> "[t]he determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.' . . . Relevant factors include 'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' . . . 'Fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.' … An additional consideration is whether the moving party's underlying claim is meritorious . . . . A court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern . . .), and whether the attorney attempted to correct his action promptly after discovering the mistake."

*Jennings v. Rivers*, 394 F.3d 850, 856–857 (10th Cir. 2005) (citations omitted).

In the present case, there is little danger of undue prejudice to Defendants because if the Satisfaction is set aside, they will merely be required to pay the full amount of two lawful Court judgments against Defendants, of which Defendants were fully apprised and already required, by Court order, to pay. Pl.'s Reply at 4−6; *see* docket. Defendants claim they will be unduly prejudiced if the Satisfaction of Judgment is set aside because they have relied on the Satisfaction for seven months and have not adequately reserved enough cash to satisfy the balance of the judgments. Defs.' Mot. in Opp'n at 9−10. The Defendants claim that "CTI's reliance is justified and CTI is now being punished for Plaintiff's legal counsel's neglect." *Id.* CTI is not being punished. In setting aside the Satisfaction, the Court is merely requiring that CTI comply with two previously-issued judgments from this Court.

In fact, it would have been reasonable for CTI's attorney (upon receiving a Satisfaction of Judgment from Mr. Merrill on or about January 27, in direct contradiction of Mr. Abraham's January 23 statement that he would "not be filing a Satisfaction of Judgment") to call Mr. Abraham to resolve the inconsistency. Unfortunately, since the courier had presumably taken the Satisfaction of Judgment with him or her on January 23,[3] to be returned during the "regular courier run" on January 27 (the following Tuesday), Mr. Abraham could not prevent Mr. Reeve from receiving the erroneous Satisfaction, and so acted promptly to correct the mistake via the January 23 email. Pl.'s Mot. Ex. E. Why Mr. Abraham waited until March 13, 2015, to again contact Mr. Reeve is not known. However, given the prejudice to the Plaintiff if the Satisfaction is not set aside—the Plaintiff would be prevented from recovering the full amount of the Court's judgments—justice dictates that Mr. Abraham's delay in contacting Mr. Reeve again until March 13 does not prevent this Court from setting aside the Satisfaction.[4] At any rate, as Plaintiff points out, Fed. R. Civ. P. 60(c)(1) allows up to a year for a party to make a 60(b)(1) motion. Pl.'s Reply at 4.

Overall, as *Jennings* requires, "taking account of all relevant circumstances," there is no reason why this Court should not set aside the Satisfaction. *Jennings*, 394 F.3d at 856. No undue prejudice to Defendants will result from such a ruling, there was no unreasonable delay in filing the Motion to Set Aside, and the mistake was "a single unintentional incident" which Mr. Abraham "attempted to correct… promptly after discovering the mistake." *Id.* at 856–857.

---

[3] The Court assumes this must be the case, because in "determin[ing] whether excusable neglect has in fact been established," the trial court must "resolv[e] all doubts in favor of the party seeking relief." *Cessna*, 715 F.2d at 1445.
[4] Again, in "determin[ing] whether excusable neglect has in fact been established," the trial court must "resolv[e] all doubts in favor of the party seeking relief." *Cessna*, 715 F.2d at 1445.

### B.     *Fed. R. Civ. P. 60(b)(3)*

The Plaintiff argues, in the alternative, that this Court should set aside the Satisfaction of Judgment because it was obtained through misrepresentation or fraud by the Defendants and Defendants' representative (specifically, the courier). However, Plaintiff has presented no specific evidence of any intent to misrepresent or defraud the Plaintiff. Defendants have produced satisfactory evidence that tends to show that the representations made by Defendants' representative were mistaken at worst—lacking the intent to misrepresent or defraud. *See* Reeve Aff. at ¶ 7–17; Irvin Aff. at ¶ 7. Plaintiff's allegations of misrepresentation or fraud therefore fail on the merits, and Plaintiff makes little, if any, effort to revive the allegations in the Reply. Pl.'s Reply at 6, n.3.  Furthermore, since the Court grants the Motion to Set Aside the Satisfaction of Judgment under Fed. R. Civ. P. 60(b)(1)—for simple mistake— it need not reach the question of misrepresentation or fraud.

### C.     *Existence of Agreement*

As the Plaintiff adeptly points out, this is a question of "first-year contract law" principles. Pl.'s Reply at 5. Even assuming, *arguendo*, that Mr. Abraham's January 14 letter to F&D constituted a valid offer to settle the judgment for over $25,000 less than the Court-ordered amount, the January 22nd email would constitute a revocation of that offer and the extension of a new settlement offer. Pl.'s Reply at 5. Therefore, in relying on the F&D letter to satisfy the judgment, Defendants essentially claim to have accepted an offer that, legally, no longer existed. Mr. Merrill, who did not represent the Plaintiff, mistakenly accepted the payment and signed an erroneous Satisfaction of Judgment. This is undoubtedly a case of "mistake, inadvertence, surprise, or excusable neglect" in which a judgment may be set aside under Rule 60(b)(1).

9

Even if this Court could consider the Defendants' $57,197.17 payment to be a counter-offer by Defendants, and Mr. Merrill's accepting the check and issuing the Satisfaction of Judgment to be a valid acceptance of the counter-offer, there would still be no binding agreement because Mr. Merrill's acceptance was based on the courier's mistaken statements or misrepresentations. Merrill Decl. at ¶¶ 3–10. The Defendants have not offered any evidence that tends to show that the courier did not, in fact, make such statements, nor that it would be unreasonable for Mr. Merrill to rely on such statements if made.

**IV. CONCLUSION**

Because Mr. Abraham's colleague, not involved in the present dispute, mistakenly (and without authority) accepted a check 'in settlement of' Plaintiff's dispute, and incorrectly issued a Satisfaction of Judgment, the Court hereby sets aside the Satisfaction of Judgment, pursuant to Fed. R. Civ. P. Rule 60(b)(1).

IT IS SO ORDERED.

DATED this 28th day of September, 2015.

BY THE COURT:

*[signature: David Sam]*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT